### In re DONAHOE'S, INC.

### In re GEO. K. STEVENSON CO.
### No. 1232.

District Court, D. Delaware.
May 14, 1937.

Stewart Lynch, of Wilmington, Del., and Joseph H. Rosenbaum, of Seattle, Wash., for debtors.

James H. Hughes, Jr. (of Ward & Gray), of Wilmington, Del., for Unsecured Creditors Committee.

Howard Duane, of Wilmington, Del., and A. Leo Weil (of Weil, Christy & Weil), of Pittsburgh, Pa., for Independent Stockholders Committee.

Murray C. Bernays (of Ernst, Gale, Bernays & Falk), of New York City, and Robert H. Richards, Jr. (of Richards, Layton & Finger), of Wilmington, Del., for Donahoe's, Inc., Preferred and Class A Stockholders Protective Ass'n.

NIELDS, District Judge.

March 23, 1936, Donahoe's, Incorporated, conducting a chain grocery business in and about Pittsburgh, Pa., filed its petition for reorganization in this court under section 77B of the Bankruptcy Act (as amended, 11 U.S.C.A. § 207). May 31, 1936, Geo. K. Stevenson Company, a wholly owned subsidiary of the debtor, filed in this proceeding its petition for reorganization under that act. The debtors were continued in possession.

Donahoe's, Incorporated, had been the victim of a flood and of the depresssion. In the period from 1924 to 1928, it incurred great financial burdens under an older management incident to real estate investments. During the depression there was an enormous shrinkage in real estate values, and debtors, like many other companies, found themselves saddled with an intolerable load. On top of the depression a flood came and washed away all hope of normal rehabilitation.

A plan of reorganization dated November 30, 1936, and later amended, was proposed by the debtors and in due course a hearing was held thereon. Two-thirds in amount of each class of creditors affected by the plan accepted it. The holders of a majority of each class of stock also accepted it. No other plan was filed or submitted.

May 7, 1937, at the argument upon the merits of the plan, objections on the part of certain stockholders calling themselves "Donahoe's, Inc., Preferred and Class A Stockholders Protective Association" were presented. This association charged that a committee styled "Independent Stockholders' Committee," advocating confirmation of the plan, was under the control and domination of the present management of the debtor, that the acceptances of the plan procured by that committee were obtained through misrepresentation of facts and through concealment, and that its attorney represented conflicting interests. Upon review of the entire record the court finds there is no evidence to sustain these charges.

The debtor's real estate is subject to an aggregate mortgage liability including interest of approximately $1,416,563.79. All of these mortgages are in default and the owners thereof are pressing for payment. If the plan of reorganization be confirmed, these mortgages will be paid in full in cash including all unpaid interest.

In addition to these mortgages, the debtor has contingent obligations amounting to $379,500 growing out of four bonds executed by the debtor in connection with certain real estate transactions. If the plan of reorganization be confirmed, this contingent liability will be reduced to a sum not exceeding $50,000 and will be assumed by the New Company.

The objectors frankly state that they are not asking that the plan be modified "in any respect to which the bankers can reasonably take exception." They accept the plan as feasible, but contend that it discriminates unfairly against the preferred and class A stockholders. In other words, the objections boil down to a single objection—that in the distribution of the new common stock there is discrimination against the preferred and class A stockholders and that such stockholders should receive a larger proportion of the new common stock.

The plan authorizes an issue of 500,000 shares of common stock of which 426,219.6 shares will be actually issued upon consummation of the plan to the following parties in the following proportions:

| | | |
|---|---|---|
| To the bankers financing a bond issue of $2,500,000 paying therefor $26,000. | 260,000 | shares |
| To holders of 18,000 shares of old common stock | 135,000 | shares |
| To holders of 25,223 shares of cumulative preferred stock | 25,223 | shares |
| To holders of class A cumulative preference stock | 5,996.6 | shares |

The old preferred stock bore a cumulative 6 per cent. dividend on a par value of $100, whereas the new preferred stock bears a cumulative 6 per cent. dividend on a par value of $25. The dividend is thus cut to one-fourth the old rate. This reduction in par value is fully justified. Upon liquidation it is quite certain that preferred stock would receive nothing. A consideration of the Enderley appraisal and the other evidence in the case establishes the fact that each share of preferred stock is worth at most $25. Thus the $25 par value of the preferred stock is fixed by the amount of assets behind that stock. Therefore it is getting all that it is entitled to. However, under the plan one share of common stock is added. Thus one share of preferred stock entitled to $25 is receiving one share of preferred stock of $25 par value and one share of common stock.

Objectors ask that the plan be modified and that the 135,000 shares allotted under the plan to the old common stockholders be

issued to the preferred and class A stockholders. The success of this company, like all other companies, depends upon the efficiency of the management. The bankers who are furnishing the new money insist that 135,000 shares be given to the present holders of common stock, those holders including the new management. ·The success of the company and the value of the preferred stock will depend upon the efforts of the new management. The allotment of 135,000 shares to that management is, under the circumstances of this case, amply justified.

The amended plan will be confirmed.